IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Civil No. 4:23-cv-269 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | VERIFIED COMPLAINT FOR |
| | ) | FORFEITURE *IN REM* |
| APPROXIMATELY $37,004.00 IN U.S. CURRENCY, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, United States of America hereby files and serves this VERIFIED COMPLAINT IN REM and alleges as follows:

## I.    NATURE OF THE ACTION

1. This is an action to forfeit and condemn specific property ("Defendant property") to the use and benefit of the United States of America ("Plaintiff") for involvement, as set forth below, in violations of 21 U.S.C. § 846 (attempt and conspiracy), and § 841(a)(1)(prohibited acts).

2. Plaintiff believes the Defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as money or a thing of value furnished or intended to be furnished by a person in exchange for a controlled substance, in violation of subchapter I – Control and Enforcement, of Chapter 13 – Drug Abuse Prevention and Control, and Title 21 – Food and Drugs, of the United States Code, and proceeds traceable to such an exchange, and money used or intended to be used to facilitate any violation of said subchapter.

## II.   DEFENDANT *IN REM*

3. The Defendant property is generally described as approximately $37,004.00 in U.S. currency seized on December 29, 2022, from Virgil Rude McIntosh III (McIntosh) in Council Bluffs, Iowa. The Defendant property is currently in the custody of the Iowa Department of Public Safety.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction over this case, pursuant to 28 U.S.C. Section 1345 (United States as plaintiff), as an action commenced by the United States of America, and pursuant to 28 U.S.C. Section 1355(a) (Fine, penalty, or forfeiture), as an action for forfeiture.

5. This Court has *in rem* jurisdiction and venue over the Defendant property under 28 U.S.C. Sections 1355(b) and 1395(b) as the acts or omissions giving rise to the forfeiture occurred in this district and because the Defendant property was seized from and is located in this district.

## IV. FACTS

6. The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

7. The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

8. Schedule II substances have a high potential for abuse, and the controlled substances have a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions, but use of a Schedule II controlled substance may lead to severe psychological or physical dependence 21 U.S.C. § 812(b)(2)(A) – (C).

9. Methamphetamine is a Schedule II controlled substance.

10. Only persons registered by the Attorney General of the United States, in accordance with rules and regulations promulgated by the Attorney General, may legally manufacture or distribute controlled substances. 21 U.S.C. § 822(a), (b).

11. Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute, a controlled substance, unless authorized by law to do so. 21 U.S.C. § 841(a)(1).

12. Under the Controlled Substances Act, it is unlawful to conspire with others to violate its prohibitions. 21 U.S.C. § 846.

13. Under the Controlled Substances Act, all moneys or things of value furnished or intended to be furnished by any person in an illegal exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate a violation of Subchapter I of the Controlled Substances Act, is subject to forfeiture to the United States and no property right shall exist in such property.

14. It is believed that evidence will show or will after a reasonable opportunity for further investigation and discovery, that the Defendant property

constituted the proceeds of a prohibited controlled substance offense, or was used or intended to be used to facilitate a prohibited controlled substance offense.

15. McIntosh is not now, nor has he ever been, authorized under state or federal law to legally distribute methamphetamine or any controlled substance.

16. McIntosh has a history of illegal drug dealing.

17. McIntosh was indicted on April 9, 2002, in the Southern District of Iowa, for possession with intent to distribute 50 grams or more of methamphetamine and carrying a firearm in relation to a drug trafficking offense.

18. Law enforcement found McIntosh on February 13, 2002, with a loaded firearm, marijuana, methamphetamine, and scales.

19. On June 27, 2002, McIntosh pled guilty to both counts.

20. McIntosh was sentenced on October 25, 2002, to 120 months of imprisonment, and released on approximately May 16, 2011.

21. In early December of 2022, a special agent of the Iowa Department of Narcotics Enforcement (DNE) received information about drug trafficking in Council Bluffs, Iowa.

22. On Thursday, December 29, 2022, the special agent was conducting surveillance at a residence in Council Bluffs of a person who was suspected of being involved of drug trafficking. The special agent observed a red Ford Mustang parked in the driveway.

23. The special agent observed a white male subject, later identified as McIntosh, leave the residence and walk to the red Ford Mustang.

24. The special agent contacted the Iowa State Patrol to conduct a traffic stop on the red Ford Mustang after it left the residence, if possible.

25. The Iowa State Patrol trooper was aware that he needed to develop his own probable cause to conduct a traffic stop on the red Ford Mustang.

26. Subsequently, the trooper conducted a traffic stop of the red Ford Mustang for a window tint violation near the intersection of N. 34th Street and Avenue C in Council Bluffs.

27. After conducting the traffic stop, the trooper was able to identify McIntosh as the driver and lone occupant of the vehicle.

28. The trooper developed probable cause to search the 2007 red Ford Mustang after his properly trained drug-detection dog positively indicated to the odor of narcotics coming from the vehicle.

29. During the probable cause search, law enforcement located approximately two ounces of cocaine, a half of an ounce of methamphetamine, a half an ounce of Psilocybin mushrooms, one ounce of marijuana, and approximately $37,004.00 in United States currency, which is the Defendant currency.

30. At the conclusion of the probable cause search, all items of contraband and the Defendant currency were seized as evidence.

31. McIntosh was transported to the Pottawattamie County Jail where he was booked on the narcotics related offenses.

32. McIntosh was given his *Miranda* warnings and agreed to speak to law enforcement.

33. McIntosh said he had been unemployed since 2021 and confessed to illegally selling drugs.

34. McIntosh explained to law enforcement the process he used to obtain illegal drugs from his source.

35. McIntosh said he had bought the controlled substances seized from the red Mustang the day before in Omaha, Nebraska, specifically methamphetamine and cocaine.

36. McIntosh said his drug source was selling methamphetamine for approximately $2,200 - $3,500 per pound.

37. McIntosh identified other people he knew in the Omaha-Council Bluffs area who were illegally dealing drugs.

38. McIntosh said he returned to drug dealing to pay bills after he was fired from his job at Menards.

39. McIntosh stated the Defendant currency came from legitimate sources but provided no documentation to substantiate his claim.

40. McIntosh was charged in Iowa District Court for Pottawattamie County on December 29, 2022, with Class C and B felony controlled substance violations and failure to affix a drug stamp tax.

41. On June 15, 2023, the same trooper stopped McIntosh, again, in the 2007 red Ford Mustang, for a brake light violation.

42. After a positive alert and indication from his properly trained drug-detection dog, the trooper conducted a probable cause search.

43. During the search, law enforcement observed plastic wing tabs holding the middle console together. They were out, as if someone had removed the middle console where the gear shifter was located. Law enforcement removed the plastic around the gear shifter, and lifted up the middle console, to find an estimated $6,000 hidden where the wires ran through. The money was rubber-banded together.

44. Due to no other contraband being located, the trooper did not seize the money and McIntosh was released.

45. On Friday, July 21, 2023, DNE obtained a federal search warrant for McIntosh's residence, in Council Bluffs, IA.

46. On Wednesday, July 26, 2023, the federal search warrant was executed by DNE special agents and members of the Southwest Iowa Narcotics Enforcement Task Force.

47. McIntosh was found in the kitchen of the residence and detained; McIntosh's roommate was also present in the home and detained.

48. During the search, law enforcement found a 9mm Sig Sauer P365 pistol in a holster sitting in plain view on the couch in the living room. There were no rounds in the chamber and six 9mm rounds in the magazine.

49. Law enforcement also found a blue pouch that contained a baggie of crystalline substance and a baggie of a white powdery substance on a table in front of the living room couch. A digital scale, a cell phone belonging to McIntosh, an air pistol, and a hard drive for McIntosh's surveillance system were also seized.

50. The bag of crystalline substance was found to have a gross weight of 29.6 grams and had a positive field test for methamphetamine.

51. McIntosh was charged in Iowa District Court for Pottawattamie County on July 26, 2023, with Class C and B felony controlled substance violations and being a felon in dominion/control of a firearm.

52. Law enforcement officers know from training and experience that persons who are engaged in the illegal distribution or sale of controlled substances for profit frequently keep the proceeds of their illegal activities in cash, in order to try and prevent their illegal drug-dealing from being detected by law enforcement or financial institutions who might become aware of suspicious large cash deposits and withdrawals.

53. Law enforcement officers know from training and experience that people engaged in the illegal distribution of controlled substances often use scales to measure the drugs they obtain and to measure the drugs they sell.

54. Law enforcement officers know from training and experience that people engaged in the illegal distribution of controlled substances often have surveillance systems in their residence to try and enable them to detect other drug dealers, law enforcement, or any other people who might pose a danger to them or who might create a risk of them being caught.

55. Law enforcement officers know from training and experience that drug dealers frequently keep firearms with them, or in their residence or vehicle, to protect

themselves, their illegal drugs, and their drug proceeds from other people involved in illegal activities.

56. Law enforcement know that drug dealers often falsely claim that drug money seized from them is from a legitimate source and they do not trust banks.

57. Law enforcement know from training and experience that drug dealers often keep their drug proceeds readily available to fund their drug dealing, for example, to pay for more drugs, scales, packaging, cell phones, surveillance systems, transportation costs, and more. As with legitimate businesses, drug dealers are known to "reinvest" part of their drug money into their drug dealing business.

58. On July 26, 2023, McIntosh was charged in the U.S. District Court for the Southern District of Iowa with possession with intent to distribute a controlled substance, with possession of a firearm in furtherance of drug trafficking, and with being a felon in possession of a firearm.

59. The totality of the direct and circumstantial evidence discussed herein supports the allegation that the Defendant money consisting of $37,004.00 seized from McIntosh on December 29, 2022, is drug proceeds or money used or intended to be used to facilitate illegal drug dealing.

## V. COUNT ONE
### (FORFEITURE UNDER 21 U.S.C. § 881(a)(6))

60. Plaintiff repeats and realleges each and every allegation set forth above.

61. The United States has reason to believe the Defendant property constitutes moneys or other things of value furnished or intended to be furnished in

exchange for a controlled substance, and/or were used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, § 843, and § 846 <u>et seq</u>.

62. As a result of the foregoing, the Defendant property is liable to condemnation and to forfeiture to the United States for its use, in accordance with 21 U.S.C. § 881(a)(6).

## VI. CONCLUSION

WHEREFORE, the Plaintiff requests that the Court issue a warrant and summons for the arrest and seizure of the Defendant property; that notice of this action be given to all persons known or thought to have an interest in or right against the property, that the Defendant property be forfeited to the United States, and that it be awarded its costs and disbursements in this action, and such other and further relief as the Court deems proper and just under the facts and applicable law.

    Respectfully submitted,

    Richard D. Westphal,
    United States Attorney

By: <u>*/s/Craig Peyton Gaumer*</u>
    Craig Peyton Gaumer
    Assistant United States Attorney
    U. S. Courthouse Annex,
    Suite 286
    110 East Court Avenue
    Des Moines, Iowa 50309
    Tel: (515) 473-9300
    Fax: (515) 473-9292
    Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Anthony Peterson, hereby verify and declare under penalty of perjury that I am a Special Agent with the Iowa Department of Narcotics Enforcement, and that I have read the foregoing Verified Complaint *in Rem, United States v. $37,004.00 in U.S. Currency* and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the Iowa Department of Narcotics Enforcement, the Iowa State Highway Patrol, and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as a special agent with the Iowa Department of Narcotics Enforcement.

Dated: July 31, 2023.

_____
Anthony Peterson, Special Agent
Iowa Department of Narcotics Enforcement

11